**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| RUTHELLEN CARVER, | CASE NO. 1:15-cv-00634-SHR-GBC |
|---|---|
| Plaintiff, | (JUDGE RAMBO) |
| | (MAGISTRATE JUDGE COHN) |
| v. | |
| CAROLYN W. COLVIN, COMMISSIONER OF SOCIAL SECURITY, | REPORT AND RECOMMENDATION TO VACATE THE DECISION OF THE COMMISSIONER AND REMAND FOR FURTHER PROCEEDINGS |
| Defendant. | Docs. 1, 10, 11, 12, 13 |

## REPORT AND RECOMMENDATION

### I.    Introduction

The above-captioned action is one seeking review of a decision of the Commissioner of Social Security ("Defendant") denying the application of Ruthellen Carver ("Plaintiff") for disability insurance benefits ("DIB") under the Social Security Act, 42 U.S.C. §§401-433 (the "Act") and Social Security Regulations, 20 C.F.R. §§404.1501 *et seq.* (the "Regulations"). Plaintiff submitted multiple treating source opinions supported by objective medical findings. Doc. 11. The only evidence inconsistent with these opinions, aside from the ALJ's lay reinterpretation of evidence, was a single non-treating, non-examining medical opinion from a source who did not review a complete record. Doc. 11.

The ALJ "must…adopt" any medical opinion entitled to controlling weight. SSR 96-5p. The Regulations afford special deference to treating sources ("treating source rule").[1] The ALJ must assign controlling weight to any well-supported treating source medical opinion unless the ALJ identifies substantial inconsistent evidence. *See* 20 C.F.R. §404.1527(c)(2). The Third Circuit consistently holds that lay reinterpretation of medical evidence is not substantial evidence to decline to adopt a treating source medical opinion. *Burns v. Colvin,* No. 1:14–CV–1925, 2016 WL 147269 (M.D. Pa. Jan. 13, 2016) (internal citations omitted). The Regulations retained, rather than abrogated, this precedent. *Id.* Thus, the ALJ may not assign less than controlling weight to a well-supported treating source medical opinion with lay reinterpretation of medical evidence. The Third Circuit has also held that a medical opinion from a non-treating, non-examining source who did not review a complete record was "not substantial." *Morales v. Apfel*, 225 F.3d 310 (3d

---

[1] The Court notes that, on September 9, 2016, the SSA proposed to eliminate the treating source rule and stop providing special deference to treating sources. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 81 FR 62560-01 ("we would consider the persuasiveness of medical opinions and prior administrative medical findings from all medical sources equally using the factors discussed below. We would not defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical finding or medical opinion, including from an individual's own healthcare providers"). This proposed revision is contained in a Notice of Proposed Rule Making and the comment period has not yet closed, so it is unclear whether the SSA will adopt this change. *Id.*

Cir. 2000).[2] In *Brownawell v. Comm'r Of Soc. Sec.*, 554 F.3d 352 (3d Cir. 2008), the only other precedential decision addressing an ALJ who relied on a non-treating, non-examining source who did not review a complete record to reject a treating source opinion, the Third Circuit also remanded. *See Brownawell*, 554 F.3d at 352. In contrast, in *Brown v. Astrue*, 649 F.3d 193 (3d Cir. 2011), the Third Circuit affirmed where there were two non-treating opinions, one from a source who reviewed the entire record. *Id.*

*Brown* is the only precedential Third Circuit case since the Social Security Administration ("SSA") codified the controlling weight provision in 1991 that affirms an ALJ who credits a non-treating medical opinion over a treating source medical opinion. Other cases frequently cited by Defendant, *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356 (3d Cir. 2011); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 201 (3d Cir. 2008); and *Plummer v. Apfel*, 186 F.3d 422 (3d Cir. 1999), do not address this issue. In *Chandler*, there were no treating source medical opinions before the ALJ. In *Johnson*, the treating source medical opinion supported the ALJ's denial. In *Plummer*, the ALJ rejected one treating opinion with three other treating opinions. Consequently, the relevant Third Circuit cases are *Morales*, *Brownawell*, *Diaz*, and *Brown*.

---

[2] The Social Security Administration abolished the policy of non-acquiescence in 1990 with the promulgation of 20 C.F.R. §404.985. *Id.*  An ALJ must follow all precedential Circuit Court decisions if more than 120 days have passed since the decision was issued. *See* 20 C.F.R. §404.985(b).

This case law is consistent with SSR 96-6p, which provides that an ALJ may only credit a non-treating, non-examining source over a treating source in "appropriate circumstances," such as when the non-treating, non-examining source was able to review a "complete case record…which provides more detailed and comprehensive information than what was available to the individual's treating source." *Id.* This may be only an example of "appropriate circumstances," but the phrase should be construed as requiring a similarly compelling reason. *See Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 223, 128 S. Ct. 831, 838, 169 L. Ed. 2d 680 (2008) ("the general term should be understood as a reference to subjects akin to the one with specific enumeration"). SSR 96-6p is consistent with SSR 96-2p, which provides that "in cases at the administrative law judge (ALJ) or Appeals Council (AC) level, the ALJ or the AC may need to consult a medical expert to gain more insight into what the clinical signs and laboratory findings signify in order to decide whether a medical opinion is well-supported or whether it is not inconsistent with other substantial evidence in the case record." *Id.*

*Morales*, *Brown*, and SSR 96-6p are all consistent with the prohibition on lay reinterpretation of evidence, because a source who reviews a complete record obviates the need for the ALJ to reinterpret medical evidence. Read together, 20 C.F.R. §404.1527(c)(2), SSR 96-6p, SSR 96-5p, *Morales*, *Brownawell*, and *Brown* indicate that, generally, the ALJ will lack substantial evidence to assign less than

controlling weight to a treating source opinion with only lay reinterpretation of medical evidence or an opinion from a non-treating, non-examining source who did not review a complete record. Harmonizing the Regulations, case law, SSRs, and other sources of authority into a consistent statement of the law regarding the treating physician rule reflects "the need for efficient administration of an obligatory nationwide benefits program" given "more than 2.5 million claims for disability benefits [filed] each year" because "the treating physician rule works to foster uniformity and regularity in Social Security benefits determinations made in the first instance by a corps of administrative law judges." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 833, 123 S. Ct. 1965, 1971, 155 L. Ed. 2d 1034 (2003) (internal citations omitted). The "massive unexplained differences in the rate at which ALJs grant or deny benefits" heightens the need for the Courts to articulate clear rules. Harold J. Krent & Scott Morris, *Inconsistency and Angst in District Court Resolution of Social Security Disability Appeals* at 5 (Chi.-Kent Coll. of Law, Research Paper No. 2014-30, 2014), *available at* http://papers.ssrn.com/sol3/papers.cfm? abstract_id=2530158.

The Court finds that the ALJ failed to provide a sufficient reason to reject the treating source opinion.  "Despite the deference due to administrative decisions in disability benefit cases, "[Courts] retain a responsibility to scrutinize the entire record and to reverse or remand if the [Commissioner]'s decision is not supported

by substantial evidence." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (quoting *Smith v. Califano,* 637 F.2d 968, 970 (3d Cir.1981)).The Court recommends that Plaintiff's appeal be granted, the decision of the Commissioner be vacated, and the matter be remanded for further proceedings and proper evaluation of the medical opinions.

## II.    Procedural Background

On January 9, 2012, Plaintiff applied for DIB. (Tr. 162-63). On April 3, 2012, the Bureau of Disability Determination ("state agency") denied Plaintiff's application (Tr. 145-49), and Plaintiff requested a hearing. (Tr. 150-51). On June 14, 2013, an ALJ held a hearing at which Plaintiff—who was represented by an attorney—and a vocational expert ("VE") appeared and testified. (Tr. 58-125).  On June 27, 2013, the ALJ found that Plaintiff was not entitled to benefits. (Tr. 18-39). Plaintiff requested review with the Appeals Council (Tr. 14-17), which the Appeals Council denied on January 30, 2015, affirming the decision of the ALJ as the "final decision" of the Commissioner. (Tr. 1-6). *See Sims v. Apfel*, 530 U.S. 103, 107 (2000).

On March 31, 2015, Plaintiff filed the above-captioned action pursuant to 42 U.S.C. § 405(g) to appeal the decision of the Commissioner. (Doc. 1). On June 8, 2015, the Commissioner filed an answer and administrative transcript of proceedings. (Docs. 10, 11). On July 24, 2015, Plaintiff filed a brief in support of

the appeal ("Pl. Brief"). (Doc. 12). On August 25, 2015, Defendant filed a brief in response ("Def. Brief"). (Doc. 13). Plaintiff did not timely file a brief in reply. On September 10, 2015, the Court referred this case to the undersigned Magistrate Judge. The matter is now ripe for review.

### III.   Standard of Review and Sequential Evaluation Process

To receive benefits under the Act, a claimant must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A). The Act requires that a claimant for disability benefits show that:

> He is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B).

The ALJ uses a five-step evaluation process to determine if a person is eligible for disability benefits. *See* 20 C.F.R. § 404.1520. The ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment from 20 C.F.R. Part

404, Subpart P, Appendix 1 ("Listing"); (4) whether the claimant's impairment prevents the claimant from doing past relevant work; and (5) whether the claimant's impairment prevents the claimant from doing any other work. *See* 20 C.F.R. §§ 404.1520. Before step four in this process, the ALJ must also determine Plaintiff's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e).

The disability determination involves shifting burdens of proof. The claimant bears the burden of proof at steps one through four. If the claimant satisfies this burden, then the Commissioner must show at step five that jobs exist in the national economy that the claimant can perform. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). The ultimate burden of proving disability under the Act lies with the claimant. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 416.912(a).

When reviewing the denial of disability benefits, the Court must determine whether substantial evidence supports the denial. *Johnson v. Commissioner of Social Sec.*, 529 F.3d 198, 200 (3d Cir. 2008). Substantial evidence is a deferential standard of review. *See Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). Substantial evidence "does not mean a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence is "less than a preponderance" and "more than a mere scintilla." *Jesurum*

*v. Sec'y of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995)

(citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

## IV.    Relevant Facts in the Record

### Relevant Facts in the Record

### A.    Background

The relevant period runs from September 1, 2008, Plaintiff's alleged onset date, through June 27, 2013, the date of the ALJ decision. (Tr. 21-39). Plaintiff was born in 1964 and was classified by the Regulations as a younger individual throughout the relevant period. 20 C.F.R. § 404.1563. Plaintiff has at least a high school education and past relevant work as a cook. (Tr. 32). Plaintiff established medically determinable, severe impairments of fibromyalgia, chronic obstructive pulmonary disease (COPD hereinafter), ischemic heart disease, mood disorder, and bipolar disorder. (Tr. 23). On June 27, 2013, the ALJ found that Plaintiff could perform a range of light work on a regular and continuing basis. (Tr. 21-39)

### B.    Treating Source Medical Opinions

On June 4, 2013, treating rheumatologist Dr.  Charles Ludovico, M.D., authored a medical opinion. (Tr. 927-30). Dr. Ludovico opined that Plaintiff would be unable to work on a regular and continuing basis because she would be absent more than five times per month, would have to leave early from work more than three times per month, would not be able to stand or walk more than one hour in an eight-hour workday, and would need to move around every fifteen minutes if she

was sitting. (Tr. 927-30). Dr. Ludovico cited Plaintiff's fibromyalgia, pain, stiffness, and fatigue. (Tr. 927-30). He noted that he had been seeing Plaintiff for about four years, since November of 2009, and her limitations had been present since that time. (Tr. 927-30).

In May of 2013, treating source and primary care physician Dr. Cullen opined that Plaintiff would be unable to work on a regular and continuing basis because she would be absent more than five times per month, would have to leave early from work more than three times per month, would not be able to stand or walk more than one hour in an eight-hour workday, and would need to move around every fifteen minutes if she was sitting. (Tr. 552-55). Dr. Cullen provided significant explanation and cited Plaintiff's fibromyalgia, pain, stiffness, fatigue, and cardiovascular disease. (Tr. 552-55). He explained that physical examination indicated diffuse tenderness and trigger points. (Tr. 553). He noted that he had been seeing Plaintiff for about five years, since September of 2008, and her limitations had been present since that time. (Tr. 552-55).

## C.    Daily Activities

Defendant accurately summarizes Plaintiff's daily activities, as reported by Plaintiff and Plaintiff's husband:

> In reports to the state agency and/or through her testimony at the June 14, 2013, administrative hearing, Plaintiff alleged disability due to heart disease, fibromyalgia, COPD, and bipolar/mood disorder (Tr. 28, 70-71, 81-82, 188). She also alleged neck, shoulder, back, and leg

pain (Tr. 28, 93, 96, 101-02) as well as near daily headaches that required her to lie down (Tr. 28, 70-71). Plaintiff noted problems with lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, using her hands, and climbing stairs (Tr. 28, 92-93, 212). She also had problems concentrating, completing tasks, remembering, and getting along with others (Tr. 26, 28, 212). Plaintiff reported being irritable, tearful, short-tempered, anxious, and uncomfortable around others (Tr. 26, 28, 82-87). She had difficult relationships with her son and ex-husband (Tr. 26, 83-84, 87). Plaintiff estimated that she could lift 10 pounds, sit and stand for 30 minutes each (she later said she could only stand 15-20 minutes (Tr. 98-99)), and walk 50 to 100 yards (Tr. 28, 79).

Despite her symptoms, Plaintiff acknowledged performing a variety of daily activities. For example, she prepared meals and performed some household chores (e.g., laundering clothes and cleaning her home) (Tr. 25-26, 30, 73, 75, 209). She also read books (Tr. 26, 30, 74), watched television (Tr. 26, 30, 211), and used a computer to see if her friends were online, check email, and look up information (Tr. 26, 30, 73-74). Plaintiff could manage her finances (Tr. 25, 210).

Outside of her home, Plaintiff remained able to drive (Tr. 25-26, 30, 75-76, 210). She also shopped in stores (Tr. 26, 30, 210). In addition, Plaintiff took a road trip to Hartford, Connecticut and stopped at a friend's house in New Jersey along the way (Tr. 26, 30, 76-77). She also took a road trip with her friends to North Carolina for vacation (Tr. 26, 30, 77-78).

Plaintiff's husband completed a Function Report – Adult – Third Party on January 31, 2012, wherein, among other things, he asserted that Plaintiff was in constant pain and had difficulty focusing on daily tasks (Tr. 32, 198). He further contended that Plaintiff experienced very dramatic mood swings and rarely finished what she started (Tr. 32, 198, 203).

(Def. Brief at 10-12). This indicates she could perform some activities of daily living on a sporadic and transitory basis that allowed for breaks as needed. (Tr. 58-109, 197-214).

### D.     Non-Treating, Non-Examining Medical Source Opinions

In March of 2012, fifteen months prior to June 27, 2013, the date of the ALJ decision, non-treating, non-examining source Dr. Bonita reviewed Plaintiff's file and authored an opinion. (Tr. 136). Dr. Bonita opined that Plaintiff could perform a range of light work. (Tr. 136). Dr. Bonita provides no narrative explanation. (Tr. 136). Dr. Bonita reviewed about 300 pages of medical records (Tr. 237-518), and was unable to review about 400 pages of medical records submitted after the opinion. (Tr. 541-930).

In June of 2012, one year prior to June 27, 2013, the date of the ALJ decision, non-treating, non-examining source Dr. Rabelo reviewed Plaintiff's file and "concur[red]with the RFC" assessed by Dr. Potera. (Tr. 534).  Dr. Rabelo summarized some of the medical records but otherwise provides no explanation. (Tr. 534).

### E.     Medical Records

On September 9, 2008, Plaintiff presented to Dr. Khemraj H. Sedani, M.D., pulmonary specialist, for evaluation after abnormal CAT scan of the chest. (Tr. 239). She had just experienced her second heart attack. (Tr. 484). Dr. Sedani diagnosed Plaintiff with bullous emphysema based on the CAT scan, instructed Plaintiff to stop smoking, and prescribed medications. (Tr. 240). Pulmonary function test indicated mild obstructive airways disease, mild degree of restrictive

lung disease, and mildly reduced diffusion "indicating loss of alveolar-capillary units and/or VQ mismatch." (Tr. 241).

On November 2, 2009, Plaintiff presented to rheumatologist Dr. Charles L. Ludivico, M.D., for musculoskeletal pain, difficulty walking, and swollen hands (Tr. 28, 483-84). Examination indicated obesity, 14 to 18 tender spots, slight fullness in both wrists, and positive Tinel's sign. (Tr. 484). Dr. Ludivico prescribed Flexeril, instructed Plaintiff to have lab work, and indicated that she should hold off on anti-inflammatory drugs due to her history of heart attacks at a young age. (Tr. 483). Follow-up indicated that Plaintiff continued to exhibit tender points, so Dr. Ludivico requested additional studies and added Tramadol to the medication regimen. (Tr. 481). Plaintiff did not have a primary care doctor and indicated that she generally did not like seeing a doctor. (Tr. 481-82). Plaintiff followed-up with Dr. Ludivico every six months through 2010. (Tr. 479-80). Plaintiff reported leg cramps and continued pain, and had "finally agreed to go for bypass surgery at the bottom of the aorta." (Tr. 479). Examination indicated fullness across her fingers and a few tenderpoints. (Tr. 479-80). In March of 2010, she reported that she had not smoked in three months, and in September of 2010, she reported that she was still not smoking. (Tr. 479-80).

In 2010, Plaintiff underwent coronary artery bypass grafting and workup indicated stenosis of her distal abdominal aorta. (Tr. 262). In November of 2010,

Plaintiff underwent revascularization of her distal aorta and left common iliac aorta, or cardiac catheterization. (Tr. 262, 266, 279). She did not suffer complications from the cardiac procedure, but threatened to kill her husband, so she was involuntarily admitted to the psychiatric unit. (Tr. 262).[3]

On March 11, 2011, Plaintiff followed-up with Dr. Ludivico and reported intermittent myalgias to her neck and back, agitation, grogginess with Vicodin, and mild Raynaud's like phenomenon. (Tr. 478). Examination indicated multiple tenderpoints and Dr. Ludivico indicated her fibromyalgia "seem[ed] to be flaring." (Tr. 478). Dr. Ludivico prescribed Xanax and Flexeril. (Tr. 478). In July of 2011, Plaintiff reported continued symptoms of pain, stiffness, and wheezing, and was smoking 1 cigarette a day. (Tr. 477). Examination indicated multiple tenderpoints. (Tr. 477). Plaintiff reported that since her aorta surgery, she did not have leg pain and could walk for one mile. (Tr. 477). In January of 2012, Plaintiff reported that she had stopped exercising the previous July when she fractured her foot. (Tr. 476). She reported "diffuse aches and pains with muscle soreness along with non-refreshed sleep in the morning" along with stress. (Tr. 476). Examination indicated "a lot of firm tender sore muscles" and that she was in a walking boot. (Tr. 476). Dr. Ludivico noted "[c]lassical diagnosis of fibromyalgia with partial relief of

---

[3] The Court primarily limits its discussion to Plaintiff's physical impairments because the Court recommends remand for proper evaluation of her physical impairments.

Flexeril. She also takes Hydrocodone twice a day for pain." (Tr. 476). Plaintiff's medications also included Lisinopril, Zocer, Plavix, aspirin, and Xanax. (Tr. 476).

On January 11, 2012, Plaintiff presented to cardiologist Dr. Karthik Sheka, M.D., and reported no cardiac complaints but complained of dyspnea, or shortness of breath, on exertion. (Tr. 457). Dr. Sheka noted this was a "long overdue follow-up." (Tr. 457).  Physical examination was normal, Dr. Sheka prescribed lisinopril and Zocor, and scheduled an EKG. (Tr. 458). At follow-ups in April and August of 2012, Dr. Sheka noted that Plaintiff denied cardiac complaints but continued reporting shortness of breath. (Tr. 780, 782). Plaintiff's blood pressure remained elevated, although it had improved. (Tr. 780, 782).

On February 28, 2012, Plaintiff followed-up with Dr. Sedani complaining of shortness of breath. (Tr. 502-04). Plaintiff had resumed smoking. (Tr. 502). Physical examination was normal but pulmonary function testing indicated that, compared to 2009, she had decreased FVC and FEV1 and worsened diffusion with mild COPD. (Tr. 503). Dr. Sedani prescribed Advair and Ventolin and scheduled additional testing. (Tr. 504). In May of 2012, Dr. Sedani noted that her pulmonary function testing had "improved." (Tr. 544). In November of 2012, Dr. Sedani noted that, with regard to FVC and FEV, Plaintiff's pulmonary function testing had improved, but the testing indicated a new impairment of air trapping, moderately

reduced diffusion, and mild to moderate hyperinflation of lung volume. (Tr. 541). Physical examination remained unchanged. (Tr. 541, 544).

Plaintiff underwent another inpatient psychiatric hospitalization from October 1, 2012 to October 4, 2012. (Tr. 767-72). Plaintiff's husband reported that her behavioral changes had started after her cardiac surgery two years earlier. (Tr. 768). Brain MRI indicated some areas of a hyperintensity involving the white matter to indicate possible demyelinating disease. (Tr. 768). Chest X-ray showed cardiomegaly without acute consolidation. (Tr. 768). EKG showed T-wave abnormalities in the lateral region and possible left atrial enlargement. (Tr. 768). Plaintiff's heart sounds were "consistent with left atrial enlargement and the apex was to the left of where one would expect." (Tr. 770).

On January 18, 2013, Plaintiff followed-up with Dr. Ludivico reporting worsening fibromyalgia with burning muscles, stiffness, problems sleeping, and increased stress. (Tr. 774). Examination indicated anxiety and tender points. (Tr. 774). Dr. Ludivico prescribed Cymbalta and continued Flexeril. (Tr. 774). Plaintiff reported that she was performing aerobic exercises "to some extent." (Tr. 774). In March of 2013, Plaintiff reported stress, that her husband was divorcing her, diffuse muscular pain and morning stiffness, and abnormal sleep. (Tr. 773). Dr. Ludivico observed abnormal posture and tenderpoints, discontinued Cymbalta, prescribed Lyrica, and continued Flexeril, Xanax, and Vicodin. (Tr. 773).

In February of 2013, Plaintiff followed up with Dr. Sheka, reported no cardiac complaints, but exhibited shortness of breath and tearfulness. (Tr. 778-79).

Plaintiff presented to primary care provider Dr. Eugene Cullen, M.D., or providers in Dr. Cullen's office, every few months from February of 2011 through the end of the relevant period. (Tr. 784-882). She reported headaches and congestion (Tr. 880), diarrhea (Tr. 876), a rash (Tr. 871), a headache that radiated through her neck and fingers (Tr. 865), jaw pain (Tr. 859), cold symptoms (Tr. 853), sinus congestion (Tr. 849), headache (Tr. 843), high blood pressure (Tr. 838), cough (Tr. 833), high blood pressure (Tr. 827), back pain (Tr. 818), headache and ear pain (Tr. 811), and cough (Tr. 804). These notes generally do not contain detailed physical examinations. *Id.* In August of 2011, Plaintiff exhibited decreased range of motion in her cervical spine and Dr. Cullen diagnosed Cervicalgia and Spasm of Muscle. (Tr. 869). In August of 2012, Plaintiff noted that she had presented to the hospital after passing out at home and reported continuing headache. (Tr. 843). Examination indicated facial swelling and she was prescribed Percocet. (Tr. 847). In October of 2012, Plaintiff followed-up after her inpatient hospitalization and examination indicated elevated blood pressure. (Tr. 838). In February of 2013, Plaintiff presented to Dr. Cullen and reported cough, chest congestion, and shortness of breath. (Tr. 804). Dr. Cullen observed that she had "96% RA." (Tr. 804, 807). In March of 2013, Plaintiff followed-up and Dr. Cullen

diagnosed cervical lympadenitis given Plaintiff's complaints of radiating jaw pain. (Tr. 798). Plaintiff continued to smoke (Tr. 791-92).

## V.    Plaintiff Allegations of Error

## A.    Treating Source Medical Opinion

Dr. Ludovico was an acceptable medical source. (Tr. 938-42); 20 C.F.R. §404.1527(a). Dr. Ludovico was also a treating source because Dr. Ludovico treated Plaintiff "a number of times and long enough to have obtained a longitudinal picture of [Plaintiff's] impairment[s]." 20 C.F.R. § 404.1527(c)(2). Dr. Ludovico's statement is a medical opinion "on the issue(s) of the nature and severity of [Plaintiff's] impairment(s)," and was not a statement on an issue reserved to the Commissioner. 20 C.F.R. §404.1527(c)(2). Thus, the ALJ must assign Dr. Ludovico's opinion controlling weight if it is well-supported and not inconsistent with other substantial evidence. *Id.*

Defendant contends that Plaintiff's fibromyalgia was not disabling because she did not exhibit swelling or decreased range of motion. (Def. Brief). First, the absence of some symptoms does not negate the presence of others. Second, SSR 12-2p provides a laundry list of signs and symptoms associated with fibromyalgia. *See* SSR 12-2p ("Symptoms and signs that may be considered include the "(s)omatic symptoms" referred to in Table No. 4, "Fibromyalgia diagnostic criteria," in the 2010 ACR Preliminary Diagnostic Criteria. We consider some of

the "somatic symptoms" listed in Table No. 4 to be "signs" under 20 C.F.R. 404.1528(b) and 416.928(b). These "somatic symptoms" include muscle pain, irritable bowel syndrome, fatigue or tiredness, thinking or remembering problems, muscle weakness, headache, pain or cramps in the abdomen, numbness or tingling, dizziness, insomnia, depression, constipation, pain in the upper abdomen, nausea, nervousness, chest pain, blurred vision, fever, diarrhea, dry mouth, itching, wheezing, Raynaud's phenomenon, hives or welts, ringing in the ears, vomiting, heartburn, oral ulcers, loss of taste, change in taste, seizures, dry eyes, shortness of breath, loss of appetite, rash, sun sensitivity, hearing difficulties, easy bruising, hair loss, frequent urination, or bladder spasms."). None of the symptoms listed are "swelling" or "decreased range of motion." *Id.*

Plaintiff cites some of the relevant precedent. (Pl. Brief at 12-13, 15, 18-19). Defendant cites *Brown*, but, as discussed below, *Brown* does not support Defendant's position because in *Brown*, the non-treating source reviewed a complete record so the ALJ did not need to undertake lay reinterpretation. (Def. Brief at 17). Defendant does not address *Morales*, even though *Morales* is the most relevant Third Circuit case. (Def. Brief). Defendant cites *Chandler*, but, as discussed below, *Chandler* did not involve treating source medical opinions and mischaracterizes the existing law by stating that *Morales* affirmed the ALJ. (Def. Brief at 17). Defendant cites a non-precedential case but, as discussed below, the

Third Circuit chastises attorneys who rely on non-precedential cases, particularly when there are precedential cases directly on point. (Def. Brief at 18). Defendant selectively cites SSR 96-5p with an ellipsis, without acknowledging that the omitted portion states that the ALJ "must…adopt" in the RFC any medical opinion entitled to controlling weight. SSR 96-5p (Def. Brief at 18).

Defendant argues that *Chandler* is not dicta because *Doak* preceded *Chandler*. (Def. Brief at 18). First, as discussed below, the 1991 Regulations retained, and did not abrogate, *Doak*. Second, *Chandler* is dicta because it did not address treating source opinions, not because it chronologically succeeded *Doak*. *Chandler* cannot "control" a case involving treating source medical opinions when *Chandler* did not involve treating source medical opinions. (Def. Brief at 18).

## 1.     Well-supported

The treating source opinion must be well-supported. *See* 20 C.F.R. §404.1527(c)(2). The Administration "changed the term 'fully supported' to 'well-supported' because" the Administration:

> [A]greed with commenters who pointed out that 'fully supported' was unclear and that, more important, it was an impractically high standard which, even if it were attainable, would essentially make any opinion superfluous. We believe that the new term, 'well-supported,' is more practicable and more reasonable; it should make clear that we will adopt opinions that are well-supported by medically acceptable clinical and laboratory diagnostic techniques unless they are inconsistent with substantial evidence in the record.

Standards for Consultative Examinations and Existing Medical Evidence, 56 FR

36932–01 at 36936. The Administration also explained:

> Some commenters were concerned that the proposed language of §§
> 404.1527(b) and (c), and 416.927(b) and (c) permitted us to discount a
> treating source's apparently unsupported opinion without recontacting
> the source, and that the rules placed highly restrictive conditions on
> obtaining additional information from treating sources.

> Response: To the contrary, recontact with treating sources to complete
> the case record and to resolve any inconsistencies in the evidence is
> one of the principal provisions of this set of rules. See §§ 404.1512(d)
> and 416.912(d) of these final regulations. Far from being restrictive,
> the intent of these rules is to require such contacts.

Standards for Consultative Examinations and Existing Medical Evidence, 56 FR

36932–01, 36951–36952; *see also* 20 C.F.R. § 404.1512(d) ("We will make every

reasonable effort to help you get medical reports from your own medical sources

when you give us permission to request the reports"); SSR 96-5p ("Because

treating source evidence (including opinion evidence) is important, if the evidence

does not support a treating source's opinion on any issue reserved to the

Commissioner and the adjudicator cannot ascertain the basis of the opinion from

the case record, the adjudicator must make 'every reasonable effort' to recontact

the source for clarification of the reasons for the opinion").

In other cases before the undersigned, Defendant contends that the

Regulations no longer require recontact based on 20 C.F.R. §404.1520b. However,

while 20 C.F.R. §404.1520b allows an ALJ to request a consultative examination,

or obtain information from other sources, rather than recontacting a treating source,

20 C.F.R. §404.1512(e) still provides that "[g]enerally, we will not request a

consultative examination until we have made every reasonable effort to obtain

evidence from your own medical sources." *Id.* As the commentary to 20 C.F.R.

§404.1520b explains:

> [W]e disagree that these rules would permit adjudicators to purchase
> CEs rather than develop evidence from a person's medical source(s).
> We have regulations that govern the purchase of CEs, and those
> regulations provide, in part, that "Generally, we will not request a
> consultative examination until we have made every reasonable effort
> to obtain evidence from your own medical sources." Other CE
> regulations underscore this point by providing that "If your medical
> sources cannot or will not give us sufficient medical evidence about
> your impairment, we may ask you to have one or more physical or
> mental examinations. Our CE regulations also provide that before
> purchasing a CE, we will consider your "existing medical reports." It
> is also important to note that, subject to certain requirements, "your
> treating source will be the preferred source to do the purchased
> examination." We believe these regulations provide sufficient
> safeguards against any potential abuse of the CE process.

How We Collect and Consider Evidence of Disability, 77 FR 10651-01.

Moreover, 20 C.F.R. §404.1520b does not automatically exempt the ALJ

from recontacting treating sources. The Commentary explains:

> [T]here are times when we would still expect adjudicators to recontact
> a person's medical source first; that is, when recontact is the most
> effective and efficient way to obtain the information needed to resolve
> an inconsistency or insufficiency in the evidence received from that
> source. In the NPRM, **we also gave two examples of situations
> where we would expect adjudicators to contact the medical source
> first, because the additional information needed is directly related
> to that source's medical opinion.** In fact, **we expect that**

> **adjudicators will often contact a person's medical source(s) first whenever the additional information sought pertains to findings, treatment, and functional capacity**, because the treating source may be the best source regarding these issues.

How We Collect and Consider Evidence of Disability, 77 FR 10651-01 (emphasis added). One of the examples in the NPRM was when there was an alleged lack of objective supported for a treating source medical opinion. How We Collect and Consider Evidence of Disability, 76 FR 20282-01.  Consequently, recontact is still generally required when the issue is an alleged lack of support for a treating source medical opinion. *Id.* Both of these sources are entitled to *Auer* deference. *Auer* deference "ordinarily calls for deference to an agency's interpretation of its own ambiguous regulation." *Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2166, 183 L. Ed. 2d 153 (2012) (citing *Auer v. Robbins*, 519 U.S. 452, 117 S. Ct. 905, 137 L. Ed. 2d 79 (1997)).

The ALJ erred in finding that Dr. Ludovico's opinion and Dr. Cullen's opinion were not well-supported. The record contains ample objective support. Pulmonary function testing indicated mild obstructive airways disease, mild degree of restrictive lung disease, and mildly reduced diffusion "indicating loss of alveolar-capillary units and/or VQ mismatch," (Tr. 241), then indicated that, compared to 2009, she had decreased FVC and FEV1 and worsened diffusion with mild COPD (Tr. 503), then indicated a new impairment of air trapping, moderately reduced diffusion, and mild to moderate hyperinflation of lung volume. (Tr. 541).

Brain MRI indicated some areas of a hyperintensity involving the white matter to indicate possible demyelinating disease. (Tr. 768). Chest X-ray showed cardiomegaly without acute consolidation. (Tr. 768). EKG showed T-wave abnormalities in the lateral region and possible left atrial enlargement. (Tr. 768). Physical examinations indicated obesity, 14 to 18 tender spots, slight fullness in both wrists, and positive Tinel's sign (Tr. 484), tender points (Tr. 481), fullness across her fingers and a few tenderpoints (Tr. 479-80), stenosis of her distal abdominal aorta (Tr. 262), multiple tenderpoints (Tr. 477-78), "a lot of firm tender sore muscles" and she was in a walking boot (Tr. 476), elevated blood pressure (Tr. 780, 782, 838), heart sounds "consistent with left atrial enlargement and the apex was to the left of where one would expect" (Tr. 770), anxiety and tender points (Tr. 774),  abnormal posture and tenderpoints (Tr. 773),  "96% RA" (Tr. 804, 807), and decreased range of motion in her cervical spine.  (Tr. 869). Moreover, there is no evidence in the record that the ALJ attempted to recontact either treating source. Doc. 9.

In another case before the undersigned, the Defendant argued that the ALJ's decision not to recontact was somehow unreviewable by the District Court. *See Rowe v. Colvin*, No. CV 3:15-1448, 2016 WL 3655576 (M.D. Pa. July 8, 2016). Similarly, Defendant may argue that the ALJ only needs to get an updated medical opinion when, in the opinion of the ALJ, there is a reasonable possibility that the

new evidence would change their mind, and this conclusion is also unreviewable.

*Chandler* notes that:

> The Social Security regulations impose no limit on how much time may pass between a report and the ALJ's decision in reliance on it. Only where "additional medical evidence is received that *in the opinion of the [ALJ]* ... may change the State agency medical ... consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing," is an update to the report required. SSR 96–6p (July 2, 1996) (emphasis added). The ALJ reached no such conclusion in this case.

*Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011).

First, as discussed below, *Chandler* is dicta as applied to the case at hand because in *Chandler*, there were no treating source medical opinions before the ALJ. *Chandler* merely holds that an ALJ may rely on a non-examining, non-treating opinion that is uncontradicted by any other medical opinion in the record. Cases where at least some evidence is entitled to the deference of the treating source rule are very different from cases where no evidence is entitled to deference. Second, *Chandler* cites no legal authority for the premise that this conclusion is unreviewable. Other cases conclude that an ALJ's decision is unreviewable only if specific regulatory or statutory authority provides that the particular decision is unreviewable. *See Traynor v. Comm'r of Soc. Sec.,* No. 13-1364(NLH), 2016 WL 54672, at *4 (D.N.J. Jan. 5, 2016) (citing 20 C.F.R. § 404.959 (ALJ's decision to dismiss case is unreviewable)); *Purter v. Heckler*, 771 F.2d 682, 692-93 (3d Cir. 1985) ("where an ALJ correctly determines that

reopening of a previously adjudicated claim is barred by *res judicata,* the district court is without jurisdiction to review that decision" because "section 405(g) limits judicial review to 'final decisions of the Secretary made after a hearing'") (internal quotations and citations omitted). Third, and most importantly, the undersigned is not holding that the ALJ must recontact the treating physician or must obtain an updated medical opinion from the non-examining source. The undersigned merely holds that the evidence, as it stands, is insufficient to reject the treating source opinion. The undersigned is not dictating to the ALJ how to cure this error or further develop the record. For instance, the ALJ could choose instead to have a consultative examination. Thus, whether the decision to recontact is unreviewable is irrelevant, because the decision that substantial evidence supports the denial as the record presently exists is certainly reviewable.

## 2.    Substantial Inconsistent Evidence

The ALJ must assign controlling weight to any well-supported treating source medical opinion unless the ALJ identifies substantial inconsistent evidence. *See* 20 C.F.R. §404.1527(c)(2). Plaintiff asserts that "[t]he ALJ's apparent conclusion that the absence of red, hot, or swollen joints is inconsistent with Dr. Trostle's opinion regarding his patient's limitations constitutes an impermissible substitution of his own lay judgment for that of a qualified medical professional."

(Pl. Brief at 9). The Court agrees. No medical professional opined that red, hot, or swollen joints are a prerequisite to finding that fibromyalgia is disabling.

The Third Circuit has held that a medical opinion from a non-treating, non-examining source who did not review a complete record was "not substantial." *Morales v. Apfel*, 225 F.3d 310 (3d Cir. 2000).[4] In *Brownawell v. Comm'r Of Soc. Sec.*, 554 F.3d 352 (3d Cir. 2008), the only other precedential decision addressing an ALJ who relied on a non-treating, non-examining source who did not review a complete record to reject a treating source opinion, the Third Circuit also remanded. *See Brownawell*, 554 F.3d at 352. In contrast, in *Brown v. Astrue*, 649 F.3d 193 (3d Cir. 2011), the Third Circuit affirmed where there were two non-treating opinions, one from a source who reviewed the entire record. *Id. see also Kreiser v. Colvin*, No. 3:15-CV-1603, 2016 WL 704957, at *13 (M.D. Pa. Feb. 23, 2016) (Noting that expert "reviewed records…through November 2012" and "the record does not appear to contain….treatment records which post date [the expert's] opinion").

In *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500 (3d Cir. 2009), there were three non-treating medical opinions and one treating medical opinion, but the Court held that the non-treating medical opinions did not provide good enough

---

[4] The Social Security Administration abolished the policy of non-acquiescence in 1990 with the promulgation of 20 C.F.R. §404.985. *Id.* An ALJ must follow all precedential Circuit Court decisions if more than 120 days have passed since the decision was issued. *See* 20 C.F.R. §404.985(b).

reason to reject the treating source medical opinion because they were "perfunctory" and omitted significant objective findings. *Id.* at 505; *see also Boyer v. Colvin*, No. CV 1:14-CV-730, 2015 WL 6438870, at *9 (M.D. Pa. Oct. 8, 2015) (Non-examining state agency opinion was insufficient to reject treating source opinion where state agency physician "mischaracterized the record"). *Diaz* is consistent with SSR 96-6p, which provides that:

> The regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker. For example, the opinions of physicians or psychologists who do not have a treatment relationship with the individual are weighed by stricter standards, based to a greater degree on medical evidence, qualifications, and explanations for the opinions, than are required of treating sources.

> For this reason, the opinions of State agency medical and psychological consultants and other program physicians and psychologists can be given weight only insofar as they are supported by evidence in the case record, considering such factors as the supportability of the opinion in the evidence including any evidence received at the administrative law judge and Appeals Council levels that was not before the State agency, the consistency of the opinion with the record as a whole, including other medical opinions, and any explanation for the opinion provided by the State agency medical or psychological consultant or other program physician or psychologist.

*Id.*

In similar cases before the undersigned, Defendant frequently cites *Brown v. Astrue*, 649 F.3d 193 (3d Cir. 2011); *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356 (3d Cir. 2011); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 201 (3d Cir. 2008); *Plummer v. Apfel*, 186 F.3d 422 (3d Cir. 1999); *Jones v. Sullivan*, 954 F.2d

125 (3d Cir. 1991); *Cummings v. Colvin*, 129 F. Supp. 3d 209, 216 (W.D. Pa. 2015); and  *Gallo v. Colvin*, No. 4:15-CV-0167, 2016 WL 2936547, at *1 (M.D. Pa. May 13, 2016). [5] None of these cases support Defendant's claims. *Jones* was decided before the SSA promulgated the controlling weight provision, and involved multiple consistent non-treating opinions that supported the ALJ's determination. *See Jones*, 954 F.2d at 129.  In *Brown* and *Gallo*, the non-treating, non-examining source reviewed a complete record. *Brown*, 649 F.3d at 196; *Gallo*, No. 4:15-CV-0167, 2016 WL 2936547, at *1. In *Chandler*, *Johnson*, and *Plummer*, the ALJ was not faced with rejecting a treating source medical opinion with non-treating source opinions. In *Johnson* the treating source medical opinion supported the ALJ's decision because it indicated the claimant did not become disabled until after the date last insured.  *Johnson*, 529 F.3d at 201-03. In *Plummer*, the ALJ relied on three *treating* source medical opinions to reject another treating source

---

[5] Defendant frequently cites these cases for the first time in objections, which precludes the undersigned Magistrate Judge from meaningfully addressing them. When parties "raise [an] argument…or the first time in her objections to the Magistrate Judge's Report and Recommendations," Courts may "deem this argument waived. *Jimenez v. Barnhart*, 46 F. App'x 684, 685 (3d Cir. 2002) (citing *Laborers' Int'l Union of N.A. v. Foster Wheeler Corp.,* 26 F.3d 375, 398 (3d Cir.1994)). However, the undersigned will address these cases because Defendant often cites them, without acknowledging that *Morales* and *Brownawell* are binding, precedential decisions that actually address an ALJ who rejects a treating source medical opinion with only a single non-treating, non-examining medical source opinion and/or lay reinterpretation of medical evidence.

medical opinion. *Plummer*, 186 F.3d at 431 (Multiple treating providers opined Plaintiff had "no significant functional limitations").

In *Chandler* there was no treating source medical opinion before the ALJ. *Chandler*, 667 F.3d at 360 360-63. There were statements from a nurse practitioner, but a nurse practitioner is not an acceptable medical source. *Id.* "[O]nly 'acceptable medical sources' can be considered treating sources, as defined in 20 CFR 404.1502 and 416.902, whose medical opinions may be entitled to controlling weight." SSR 06-3p. Consequently, they may never be entitled to controlling weight and are not entitled to the treating source rule. *See* 20 C.F.R. §404.1527(c)(2); SSR 06-3p. The claimant submitted two medical opinions in support of her claim, but not until after the ALJ decision. *Chandler*, 667 F.3d at 360. The Third Circuit excluded these from consideration because Plaintiff had no good cause for not submitting them prior to the ALJ decision. *Id.* (citing *Matthews v. Apfel*, 239 F.3d 589, 595 (3d Cir. 2001).

The exclusion of the treating source opinions was significant because the role of the Court is generally limited to review "based on the record that was made before the ALJ." *Matthews*, 239 F.3d at 593. The exclusion of the treating source opinions was significant because the role of the Court is generally limited to review "based on the record that was made before the ALJ." *Matthews*, 239 F.3d at 593. The Court in *Matthews* explained:

> It might seem ... that the district judge and we would be free to consider the new evidence that was before the Appeals Council in deciding whether the decision denying benefits was supported by the record as a whole. And of course this is right when the Council has accepted the case for review and made a decision on the merits, based on all the evidence before it, which then becomes the decision reviewed in the courts. It is wrong when the Council has refused to review the case. For then the decision reviewed in the courts is the decision of the administrative law judge. The correctness of that decision depends on the evidence that was before him. He cannot be faulted for having failed to weigh evidence never presented to him....

*Id.* (quoting *Eads v. Sec'y of Dep't of Health & Human Servs.*, 983 F.2d 815, 817

(7th Cir. 1993)). The Court continued:

> Our holding is also in accord with sound public policy. We should encourage disability claimants to present to the ALJ all relevant evidence concerning the claimant's impairments. If we were to order remand for each item of new and material evidence, we would open the door for claimants to withhold evidence from the ALJ in order to preserve a reason for remand. *See Szubak*, 745 F.2d at 834 ("A claimant might be tempted to withhold medical reports, or refrain from introducing all relevant evidence, with the idea of obtaining another bite of the apple if the Secretary decides that the claimant is not disabled.") (quotation omitted); *Wilkins,* 953 F.2d at 97 (Chapman, J., dissenting) ("By allowing the proceedings to be reopened and remanded for additional evidence, ... the majority is encouraging attorneys to hold back evidence and then seek remand for consideration of evidence that was available at the time of the ALJ hearing."). Instead, we believe that it is a much sounder policy to require claimants to present all material evidence to the ALJ and prohibit judicial review of new evidence unless there is good reason for not having brought it before the ALJ. Such a holding is instrumental to the speedy and orderly disposition of Social Security claims.

*Matthews v. Apfel*, 239 F.3d 589, 595 (3d Cir. 2001).

*Chandler* also mischaracterizes the existing case law. *Chandler* states "[w]e have permitted reliance on records much older than those presenting in this case. *See, e.g., Morales v. Apfel,* 225 F.3d 310, 312–13 (3d Cir.2000) (upholding a 1997 ALJ decision based on records from 1989 through 1994)." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). As discussed above, *Morales* did not uphold the ALJ decision. *See Morales v. Apfel*, 225 F.3d 310, 312 (3d Cir. 2000) ("Because the Commissioner's decision is not supported by substantial evidence, we reverse the district court.").

*Cummings* erroneously relies on *Chandler* without recognizing that *Chandler* did not involve a treating source medical opinion before the ALJ. *Cummings*, 129 F. Supp. 3d at 216. The District Court in *Cummings* wrote that "[i]f *Doak* actually stood for the rule espoused by Plaintiff, the Court of Appeals in *Chandler* would have surely attempted to reconcile its reasoning with that of *Doak.* It had to be aware of *Doak,* as the district court made it a centerpiece of its reasoning. Yet the Court of Appeals said nothing." *Cummings v. Colvin*, 129 F. Supp. 3d 209, 216 (W.D. Pa. 2015). The undersigned respectfully disagrees. *Doak* and *Chandler* dealt with separate issues. In *Chandler*, there were no treating source medical opinions before the ALJ, so the only issue was whether the ALJ could rely on an uncontradicted medical opinion from a non-treating, non-examining source. In *Doak*, there was a treating source medical opinion before the ALJ.

Consequently, *Chandler*'s failure to cite *Doak* cannot be construed to limit *Doak*'s application to cases involving a treating source medical opinion before the ALJ. The ALJ and the District Court are bound by precedential Third Circuit decisions. *See Burns v. Colvin*, No. 1:14-CV-1925, 2016 WL 147269, at *1 (M.D. Pa. Jan. 13, 2016). "When binding precedent squarely addresses an issue, the District Court may not deviate from that precedent based on dicta." *Id.* (citing *Bd. of Trustees of Bricklayers & Allied Craftsmen Local 6 of New Jersey Welfare Fund v. Wettlin Associates, Inc.*, 237 F.3d 270, 275 (3d Cir.2001) ("To the extent it applied dicta ... the District Court erred"); *Kool, Mann, Coffee & Co. v. Coffey,* 300 F.3d 340, 355 (3d Cir.2002) (Statements that are "not necessary to the actual holding of the case" are "dicta" and "not binding"); *Calhoun v. Yamaha Motor Corp.,* 216 F.3d 338, 344 n. 9 (3d Cir.2000) ("Insofar as this determination was not necessary to either court's ultimate holding, however, it properly is classified as dictum. It therefore does not possess a binding effect on us pursuant to the 'law of the case' doctrine."); *Chowdhury v. Reading Hosp. & Med. Ctr.,* 677 F.2d 317, 324 (3d Cir.1982) ("[D]ictum, unlike holding, does not have the strength of a decision 'forged from actual experience by the hammer and anvil of litigation,' a fact to be considered when assessing its utility in the context of an actual controversy. Similarly, appellate courts must be cautious to avoid promulgating unnecessarily broad rules of law.") (quotations omitted); 20 C.F.R. § 404.985(a)("We will apply a holding in

a United States Court of Appeals decision that we determine conflicts with our

interpretation of a provision of the Social Security Act or regulations unless the

Government seeks further judicial review of that decision or we relitigate the issue

presented in the decision")).[6] The District Court may not deviate from binding

precedent in *Brownawell*, *Morales*, *Diaz*, and *Brown* based on dicta in *Chandler*,

*Plummer*, or *Johnson*. *See Brownawell*, 554 F.3d at 352; *Morales*, 225 F.3d at 317;

*Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500 (3d Cir. 2009); *Brown*, 649 F.3d at 196.

Similarly, as the Third Circuit explained in *Jamison v. Klem*, 544 F.3d 266,

278 n. 11 (3d Cir. 2008):

> We also reject the District Court's reliance on *Voils v. Hall,* 151
> Fed.Appx. 793, 795 (11th Cir.2005). We have steadfastly attempted to
> discourage District Courts as well as attorneys from relying on
> nonprecedential opinions of this court. *See* Third Circuit Internal
> Operating Procedure 5.7 (indicating that "the court by tradition does
> not cite to its not precedential opinions as authority"). *See also, Fallon
> Elec. Co. v. Cincinnati Insur. Co.,* 121 F.3d 125, 128 n. 1 (3d
> Cir.1997) ("[We] do not regard such opinions as binding precedent."").
> We do not accept these opinions as binding precedent because, unlike
> precedential opinions, they do not circulate to the entire court before
> they are filed. Accordingly, not every judge on the court has had an

---

[6] The Social Security Administration abolished its policy of nonacquiescence in 1990. *See Hyatt v. Barnhart*, 315 F.3d 239, 242 (4th Cir. 2002) ("The SSA ended its policy of nonacquiescence"); *Mannella v. Astrue*, No. CV06-469-TUC-CKJ BPV, 2008 WL 2428868, at *14 (D. Ariz. Feb. 20, 2008), *report and recommendation adopted in part, rejected in part,* No. CIV06-469-TUC-CKJ BP, 2008 WL 2428869 (D. Ariz. June 12, 2008) ("The Social Security Administration followed a 'nonacquiescence' policy for a number of years…The Social Security Administration ("SSA") has since issued regulations which require that the SSA apply a Circuit Court of Appeals decision"); 20 C.F.R. §404.985(a).

opportunity to express his/her views about the opinion before it is filed.

Here, the District Court relied on a decision that is not only not precedential, it is not even a decision of a panel of this court. Accordingly, we will not explain why we think that decision is ill-advised and poorly reasoned.

*Id.* at 278 n. 11. The District Court may not deviate from binding precedent in *Brownawell*, *Morales*, *Diaz*, and *Brown* based on non-precedential decisions. *Brownawell*, 554 F.3d at 352; *Morales*, 225 F.3d at 317; *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500 (3d Cir. 2009); *Brown*, 649 F.3d at 196.

The case law is consistent with SSR 96-6p, which provides that an ALJ may only credit a non-treating, non-examining source over a treating source in "appropriate circumstances," such as when the non-treating, non-examining source was able to review a "complete case record…which provides more detailed and comprehensive information than what was available to the individual's treating source." *Id.* This may be only an example of "appropriate circumstances," but the phrase should be construed as requiring a similarly compelling reason. *See Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 223, 128 S. Ct. 831, 838, 169 L. Ed. 2d 680 (2008) ("the general term should be understood as a reference to subjects akin to the one with specific enumeration"). SSR 96-6p is consistent with SSR 96-2p, which provides that "in cases at the administrative law judge (ALJ) or Appeals Council (AC) level, the ALJ or the AC may need to consult a medical expert to

gain more insight into what the clinical signs and laboratory findings signify in order to decide whether a medical opinion is well-supported or whether it is not inconsistent with other substantial evidence in the case record." *Id.*

The ALJ is bound by SSR 96-6p and SSR 96-2p. *See* 20 C.F.R. § 402.35(b)(1) (Social Security Rulings are "binding on all components of the Social Security Administration").  Moreover, *Auer* deference "ordinarily calls for deference to an agency's interpretation of its own ambiguous regulation." *Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2166, 183 L. Ed. 2d 153 (2012) (citing *Auer v. Robbins*, 519 U.S. 452, 117 S. Ct. 905, 137 L. Ed. 2d 79 (1997)). SSR 96-6p is the Social Security Administration's interpretation of 20 C.F.R. §404.1527(c), so it is entitled to deference by the Courts.  *See* SSR 96-6p. In contrast, Defendant's position in this case is nothing more than a "'convenient litigating position,'" or a '*post hoc* rationalizatio[n]' advanced by an agency seeking to defend past agency action against attack." *SmithKline Beecham Corp.*, 132 S. Ct. at 2166-67 (quoting *Bowen v. Georgetown Univ. Hospital,* 488 U.S. 204, 213, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988) *Auer, supra,* at 462, 117 S.Ct. 905)).

*Morales*, *Brown*, SSR 96-6p, and SSR 96-2p are all consistent with the prohibition on lay reinterpretation of evidence, because a source who reviews a complete record obviates the need for the ALJ to reinterpret medical evidence. *See*

*Burns v. Colvin*, No. 1:14-CV-1925, 2016 WL 147269, at *1 (M.D. Pa. Jan. 13, 2016); *Tilton v. Colvin*, No. 1:14-CV-02219-YK-GBC, 2016 WL 1580003, at *1 (M.D. Pa. Mar. 31, 2016), *report and recommendation adopted,* No. 1:14-CV-2219, 2016 WL 1569895 (M.D. Pa. Apr. 19, 2016) (citing *Frankenfield v. Bowen,* 861 F.2d 405, 408 (3d Cir. 1988); *Doak v. Heckler,* 790 F.2d 26, 29–30 (3d Cir. 1986); *Ferguson v. Schweiker,* 765 F.2d 31, 37, 36–37 (3d Cir. 1985); *Kent v. Schweiker,* 710 F.2d 110, 115 (3d Cir. 1983); *Van Horn v. Schweiker,* 717 F.2d 871, 874 (3d Cir. 1983); *Kelly v. R.R. Ret. Bd.,* 625 F.2d 486, 494 (3d Cir. 1980); *Rossi v. Califano,* 602 F.2d 55, 58–59, (3d Cir. 1979); *Fowler v. Califano,* 596 F.2d 600, 603 (3d Cir. 1979); *Gober v. Matthews,* 574 F.2d 772, 777 (3d Cir. 1978)). These "cases hold that, even under the deferential substantial evidence standard of review, lay reinterpretation of medical evidence is not inconsistent substantial evidence sufficient to reject an uncontradicted treating source medical opinion." *Id.* (internal quotation omitted); *see also*   Fed.R.Evid. 702, 1972 Advisory Committee Notes ("An intelligent evaluation of facts is often difficult or impossible without the application of some scientific, technical, or other specialized knowledge ...There is no more certain test for determining when experts may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized

understanding of the subject involved in the dispute' ") (quoting Ladd, Expert Testimony, 5 Vand.L.Rev. 414, 418 (1952))). If a non-examining source is unable to review the complete case record, the ALJ will be required to reinterpret the remainder of the record in order to reject a treating source opinion.

The Social Security Administration retained, rather than abrogated, this common-law when it promulgated 20 C.F.R. §404.1527(c). *Id.* (citing *Burns v. Colvin,* No. 1:14–CV–1925, 2016 WL 147269 (M.D. Pa. Jan. 13, 2016). Regulatory enactments are presumed to retain, rather than abrogate, pre-existing common law unless the enactments are incompatible with existing common-law or there is evidence of a clear intent to abrogate. *See Burns v. Colvin*, No. 1:14-CV-1925, 2016 WL 147269 (M.D. Pa. Jan. 13, 2016) (citing *United States v. Texas*, 507 U.S. 529, 534, 113 S.Ct. 1631, 123 L.Ed.2d 245 (1993); *Sebelius v. Cloer*, —— U.S. ——, 133 S.Ct. 1886, 1896, 185 L.Ed.2d 1003 (2013); *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253–254, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992); *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 543, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994)). The party asserting that the enactment abrogates common law bears the burden of overcoming this presumption. *See Green v. Bock Laundry Mach. Co.*, 490 U.S. 504, 521, 109 S.Ct. 1981, 104 L.Ed.2d 557 (1989).

The controlling weight provision, 20 C.F.R. §404.1527(c)(2), codifies the treating source rule and is compatible with *Frankenfield*, *Doak*, *Ferguson*, *Kent*,

*Van Horn*, *Kelly*, *Rossi*, *Fowler*, and *Gober*. *See Burns v. Colvin*, No. 1:14-CV-1925, 2016 WL 147269 (M.D. Pa. Jan. 13, 2016). Specifically, 20 C.F.R. § 404.1527(c)(2) provides that, if a treating source opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record" the ALJ must "give it controlling weight." *Id.* The Regulations do not define other "inconsistent….substantial evidence." *Id. Frankenfield*, *Doak*, *Ferguson*, *Kent*, *Van Horn*, *Kelly*, *Rossi*, *Fowler*, and *Gober* hold that lay reinterpretation of medical evidence does not constitute "inconsistent . . . substantial evidence." *See Gober*, 574 F.2d at 777; *Frankenfield*, 861 F.2d at 408; *Doak*, 790 F.2d at 29-30; *Ferguson*, 765 F.2d at 36-37; *Kent*, 710 F.2d at 115; *Van Horn*, 717 F.2d at 874; *Kelly*, 625 F.2d at 494; *Rossi*, 602 F.2d at 58-59; *Fowler*, 596 F.2d at 603. *Frankenfield*, *Doak*, *Ferguson*, *Kent*, *Van Horn*, *Kelly*, *Rossi*, *Fowler* and *Gober* clarify the regulatory language "inconsistent…substantial evidence." 20 C.F.R. §404.1527(c)(2). *Frankenfield*, *Doak*, *Ferguson*, *Kent*, *Van Horn*, *Kelly*, *Rossi*, *Fowler*, and *Gober* and 20 C.F.R. §404.1527(c)(2) are compatible.

The intent to codify, rather than change, the existing law with 20 C.F.R. §404.1527(c) has been noted by Congress, the Supreme Court, and the Social Security Administration itself. *See Burns v. Colvin*, No. 1:14-CV-1925, 2016 WL 147269, at *1 (M.D. Pa. Jan. 13, 2016) (citing Standards for Consultative

Examinations and Existing Medical Evidence, 56 FR 36932–01 at 36934 ("[T]he majority of the circuit courts generally ... agree that treating source evidence tends to have a special intrinsic value by virtue of the treating source's relationship with the claimant ... [and] if the Secretary decides to reject such an opinion, he should provide the claimant with good reasons for doing so. We have been guided by these principles in our development of the final rule"); *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 823, 123 S.Ct. 1965, 1966, 155 L.Ed.2d 1034 (2003) ("The treating physician rule ... was originally developed by Courts of Appeals ... In 1991, the Commissioner of Social Security adopted regulations approving and formalizing use of the rule in the Social Security disability program"); Standards for Consultative Examinations and Existing Medical Evidence, 56 FR 36932-01 ("In the preamble to the Notice of Proposed Rulemaking, we noted that the Senate Finance Committee had indicated in its report on Public Law 98-460 (S. Rep. No. 98-466, 98th Cong., 2d Sess., 26 (1984)), that it did not intend to alter in any way the relative weight that the Secretary places on reports received from treating physicians and from physicians who perform consultative examinations").

Other Circuits have also explicitly retained the prohibition on lay reinterpretation of medical evidence. *See Balsamo v. Chater*, 142 F.3d 75, 80-81 (2d Cir. 1998); *Moss v. Astrue*, 555 F.3d 556, 560 (7th Cir. 2009); *Burgess v. Astrue*, 537 F.3d 117, 131 (2d Cir. 2008); *Robinson v. Barnhart*, 366 F.3d 1078,

1083 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1121 (10th Cir. 2004); *Harbor v. Apfel*, 242 F.3d 375 (8th Cir. 2000); *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999); *Wilder v. Chater*, 64 F.3d 335, 337-38 (7th Cir. 1995). These cases continued to hold that an ALJ may not reject an uncontradicted treating source medical opinion with only lay reinterpretation of medical evidence. *Id.* When a Court of Appeals issues a decision that the SSA determines is contradictory to the intended interpretation of a regulation, the SSA must issue an Acquiescence Ruling. 20 C.F.R. § 404.985(b)(1) ("We will release an Acquiescence Ruling for publication in the Federal Register for any precedential circuit court decision that we determine contains a holding that conflicts with our interpretation of a provision of the Social Security Act or regulations no later than 120 days from the receipt of the court's decision."). More than 120 days has passed since these decisions, and the SSA has not promulgated an Acquiescence Ruling regarding any of these decisions. *Cf. Burns v. Colvin*, No. 1:14-CV-1925, 2016 WL 147269 (M.D. Pa. Jan. 13, 2016) (Absent a Social Security Ruling, Acquiescence Ruling, or Regulation indicating the SSA's interpretation, SSA's position in this case is "nothing more than a convenient litigating position, or a post hoc rationalization advanced by an agency seeking to defend past agency action against attack") (quoting *Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2166-21667 (2012)).

Congress has since amended the Act to require medical expert review of the medical evidence for any claimant who establishes any medically determinable impairment. *See* BIPARTISAN BUDGET ACT OF 2015, PL 114–74, November 2, 2015, 129 Stat 584, § 832(a). This change is particularly notable given the context of the other amendments to the Act, which were generally designed to save costs for the Administration.[7] *See also North Haven Board of Education v. Bell,* 456 U.S. 512, 535, 102 S.Ct. 1912, 72 L.Ed.2d 299 (1982) ( "Although postenactment developments cannot be accorded 'the weight of contemporary legislative history, we would be remiss if we ignored these authoritative expressions") (quoting *Cannon v. Univ. of Chi.,* 441 U.S. 677, 686 n. 7, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979)); (*INS v. Cardoza–Fonseca,* 480 U.S. 421, 430, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987)).

Non-medical evidence, like activities of daily living that contradict the opinion, may only provide substantial inconsistent evidence in "extremely rare" cases. *See* Standards for Consultative Examinations and Existing Medical Evidence, 56 FR 36932-01 at 36936; *Torres v. Barnhart*, 139 F. App'x 411, 414 (3d Cir. 2005) (ALJ permissibly rejected treating opinion "in combination with

---

[7] Subtitle A, entitled "Ensuring Correct Payments and Reducing Fraud," expands fraud investigation units nationwide, prohibits the Commissioner from considering evidence from medical providers who have been convicted of certain crimes, creates "new and stronger penalties" for Social Security fraud, and requires electronic payroll data to improve efficient administration. *Id.* §§ 811–831.

other evidence of record including Claimant's own testimony"); *Kays v. Colvin*, No. 1:13-CV-02468, 2014 WL 7012758, at *7 (M.D. Pa. Dec. 11, 2014); *Marr v. Colvin*, No. 1:13-cv-2499 (M.D.P.A. April 15, 2015). However, the "non-medical" evidence must be truly "inconsistent" with the opinion. Standards for Consultative Examinations and Existing Medical Evidence, 56 FR 36932-01 at 36936; *see also Chunn v. Barnhart*, 397 F.3d 667, 672 (8th Cir. 2005) ("the ALJ's decision fails to explain how Chunn's activities and behaviors are inconsistent with Dr. Ziolkow's characterization of her mental capacity.").

The ALJ erred in finding that Dr. Ludovico's opinion was inconsistent with other substantial evidence. The non-medical evidence did not contradict Dr. Ludovico's opinion. (Def. Brief at 10-12). These activities of daily living do not contradict Dr. Ludovico's opinion that Plaintiff could not perform work on a regular and continuing basis without taking additional breaks. (Tr. 939-42). *Wright v. Sullivan,* 900 F.2d 675, 682 (3d Cir.1990) (*quoting Smith v. Califano,* 637 F.2d 968, 971 (3d Cir.1981) ("disability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity…sporadic or transitory activity does not disprove disability"). This is not one of the "extremely rare" cases when an ALJ may reject a treating source opinion based on reported activities of daily living. *See* Standards for Consultative Examinations and Existing Medical Evidence, 56 FR 36932-01 at 36936.

This leaves only Dr. Bonita's and Dr. Rabelo's opinions, from non-treating, non-examining sources who did not review the entire record. (Tr. 136, 534). Dr. Bonita's and Dr. Rabelo's inability to review the entire record required the ALJ to engage in impermissible lay interpretation of medical evidence. *See Gober*, 574 F.2d at 777; *Frankenfield*, 861 F.2d at 408; *Doak*, 790 F.2d at 29-30; *Ferguson*, 765 F.2d at 36-37; *Kent*, 710 F.2d at 115; *Van Horn*, 717 F.2d at 874; *Kelly*, 625 F.2d at 494; *Rossi*, 602 F.2d at 58-59; *Fowler*, 596 F.2d at 603. Dr. Bonita's opinion was fifteen months prior to June 27, 2013, the date of the ALJ decision. (Tr. 136), and Dr. Rabelo's opinion was one year prior to June 27, 2013. (Tr. 534). Dr. Bonita provides no narrative explanation. (Tr. 136). Dr. Bonita reviewed about 300 pages of medical records (Tr. 237-518), and was unable to review about 400 pages of medical records submitted after the opinion. (Tr. 541-930). Dr. Rabelo summarized some of the medical records but otherwise provides no explanation. (Tr. 534).

Like *Diaz*, Dr. Bonita's opinion was "perfunctory" and omitted significant objective findings. *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505 (3d Cir. 2009). (Tr. 136). In contravention of SSR 96-6p, Dr. Bonita provided essentially no explanation for the opinion. *See* SSR 96-6p ("the opinions of State agency medical and psychological consultants and other program physicians and psychologists can be given weight only insofar as they are supported by evidence in the case record,

considering such factors as the…explanation for the opinion provided by the State agency medical or psychological consultant or other program physician or psychologist.").

Unlike *Brown* or the example in SSR 96-6p, and like *Morales* and *Brownawell*, Dr. Bonita failed to review a complete case record. *See Brownawell*, 554 F.3d at 352; *Morales*, 225 F.3d at 317; *Brown*, 649 F.3d at 196. Dr. Bonita's inability to review the entire record required the ALJ to engage in impermissible lay interpretation of medical evidence. *See Gober*, 574 F.2d at 777; *Frankenfield*, 861 F.2d at 408; *Doak*, 790 F.2d at 29-30; *Ferguson*, 765 F.2d at 36-37; *Kent*, 710 F.2d at 115; *Van Horn*, 717 F.2d at 874; *Kelly*, 625 F.2d at 494; *Rossi*, 602 F.2d at 58-59; *Fowler*, 596 F.2d at 603.

Read together, 20 C.F.R. §404.1527(c)(2), SSR 96-6p, SSR 96-5p, SSR 96-2p, *Diaz*, *Morales*, *Brownawell*, *Brown*, and the prohibition on lay reinterpretation of medical evidence indicate that, generally, the ALJ will lack substantial evidence to assign less than controlling weight to a treating source opinion with only lay reinterpretation of medical evidence or an opinion from a non-treating, non-examining source who did not review a complete record. *See* 20 C.F.R. §404.1527(c)(2); SSR 96-6p; SSR 96-5p; SSR 96-2p; *Brown*, 649 F.3d at 196; *Diaz*, 577 F.3d at 505; *Brownawell*, 554 F.3d at 352; *Morales*, 225 F.3d at 317; *Gober*, 574 F.2d at 777; *Frankenfield*, 861 F.2d at 408; *Doak*, 790 F.2d at 29-30;

*Ferguson*, 765 F.2d at 36-37; *Kent*, 710 F.2d at 115; *Van Horn*, 717 F.2d at 874; *Kelly*, 625 F.2d at 494; *Rossi*, 602 F.2d at 58-59; *Fowler*, 596 F.2d at 603. Harmonizing the Regulations, case law, SSRs, and other sources of authority into a consistent statement of the law regarding the treating physician rule reflects "the need for efficient administration of an obligatory nationwide benefits program" given "more than 2.5 million claims for disability benefits [filed] each year" because "the treating physician rule works to foster uniformity and regularity in Social Security benefits determinations made in the first instance by a corps of administrative law judges." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 833, 123 S. Ct. 1965, 1971, 155 L. Ed. 2d 1034 (2003) (internal citations omitted). The "massive unexplained differences in the rate at which ALJs grant or deny benefits" heightens the need for the Courts to articulate clear rules. Harold J. Krent & Scott Morris, *Inconsistency and Angst in District Court Resolution of Social Security Disability Appeals* at 5 (Chi.-Kent Coll. of Law, Research Paper No. 2014-30, 2014), *available at* http://papers.ssrn.com/sol3/papers.cfm? abstract_id=2530158.

The ALJ has not provided a reason as compelling as the example in 96-6p for rejecting the treating source opinion with only a single non-treating, non-examining medical opinion. *See* SSR 96-6p; *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 223, 128 S. Ct. 831, 838, 169 L. Ed. 2d 680 (2008) ("when a general

term follows a specific one, the general term should be understood as a reference to subjects akin to the one with specific enumeration"). The Court recommends remanding the case for further evaluation of the treating source opinion evidence pursuant to SSR 96-6p, 20 C.F.R. §404.1527(c) and *Brown*, *Diaz*, *Brownawell*, *Morales*, *Frankenfield*, *Doak*, *Ferguson*, *Kent*, *Van Horn*, *Kelly*, *Rossi*, *Fowler* and *Gober*. *See* 20 C.F.R. §404.1527(c)(2); SSR 96-6p; SSR 96-5p; SSR 96-2p; *Brown*, 649 F.3d at 196; *Diaz*, 577 F.3d at 505; *Brownawell*, 554 F.3d at 352; *Morales*, 225 F.3d at 317; *Gober*, 574 F.2d at 777; *Frankenfield*, 861 F.2d at 408; *Doak*, 790 F.2d at 29-30; *Ferguson*, 765 F.2d at 36-37; *Kent*, 710 F.2d at 115; *Van Horn*, 717 F.2d at 874; *Kelly*, 625 F.2d at 494; *Rossi*, 602 F.2d at 58-59; *Fowler*, 596 F.2d at 603.

## B.    Other Allegations of Error

Because the Court recommends remand on these grounds, it declines to address Plaintiff's other allegations. A remand may produce different results on these claims, making discussion of them moot. *See LaSalle v. Comm'r of Soc. Sec.*, No. CIV.A. 10-1096, 2011 WL 1456166, at *7 (W.D. Pa. Apr. 14, 2011).

## C.    Remedy

Remand, rather than reversal and award of benefits, is the appropriate remedy in this case. *See Markle v. Barnhart*, 324 F.3d 182, 189 (3d Cir. 2003)

("[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation") (internal quotations omitted)).

## VI.    Conclusion

The undersigned recommends that the Court vacate the decision of the Commissioner pursuant to 42 U.S.C. § 405(g) and remand the case for further proceedings.

Accordingly, it is HEREBY RECOMMENDED:

1.    The decision of the Commissioner of Social Security denying Plaintiff's benefits under the Act be vacated and the case remanded to the Commissioner of Social Security to develop the record fully, conduct a new administrative hearing and appropriately evaluate the evidence.

2.    The Clerk of Court close this case.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a Magistrate Judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A Judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.

The Judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.


Dated: September 14, 2016                           _____s/Gerald B. Cohn_____
                                                    GERALD B. COHN
                                        UNITED STATES MAGISTRATE JUDGE